Jeffrey N. Goldberg (SBN 217555)
jeff@jeffreyngoldberglaw.com
THE LAW OFFICES OF JEFFREY N. GOLDBERG, P.C.
11601 Wilshire Blvd., Ste 500
Los Angeles, California  90025
Tel.:   (310) 765-2988
Fax:   (310) 943-2765

Attorney for Plaintiff
Crypto Asset Fund, LLC

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRYPTO ASSET FUND, LLC, a Delaware limited liability company, <br><br>      Plaintiff, <br><br>  vs. <br><br> HOARD, INCORPORATED, a Delaware corporation; JASON DAVIS, an individual; and DOES 1-10, inclusive, <br><br>      Defendants. | **CASE NO.:** \_\_'20 CV0438 MMA AHG\_\_ <br><br> **COMPLAINT FOR:** <br><br> **VIOLATIONS OF (1) THE SECURITIES ACT OF 1933, (2) THE SECURITIES EXCHANGE ACT OF 1934, (3) CALIFORNIA'S CORPORATE SECURITIES LAW OF 1968 & (4) CALIFORNIA'S UNFAIR COMPETITON LAW AND CLAIMS FOR (5) BREACH OF CONTRACT, (6) BREACH OF THE COVENANT OF GOOD FAITH & FAIR DEALING, (7) UNJUST ENRICHMENT, (8) CONVERSION, (9) PROMISSORY ESTOPPEL, (10) FRAUD & (11) NEGLIGENT MISREPRESENTATION** <br><br> **AND DEMAND FOR JURY TRIAL** |

## JURISDICTION

1.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1367, 15 U.S.C. § 77v, and 15 U.S.C. § 78aa because Plaintiff alleges violations of the Securities Act of 1933 and Securities Exchange Act of 1934.

2.     This Court has personal jurisdiction over Defendants because Defendants either conduct business in this District or are present in this District for jurisdictional purposes.  Defendants have sufficient minimum contacts with this District as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.  Defendants solicited investors in this District and obtained money or valuable cryptocurrency from those investors, including Plaintiff.

3.     Defendants have purposefully availed themselves of the benefits of operating in this jurisdiction, and this Court may exercise personal jurisdiction over Defendants.

## NATURE OF THE ACTION

4.     Plaintiff brings this action against Defendants for their violations of the Securities Act of 1933 (the "Securities Act"), the Securities Exchange Act of 1934 (the "Exchange Act"), California's Corporate Securities Law of 1968 (the "California Securities Law"), and California's Unfair Competition Law and for breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment, conversion, promissory estoppel, fraud, and negligent misrepresentation.

5.     Plaintiff seeks rescission, compensatory damages, including lost profits, restitution, disgorgement of profits, pre- and post-judgment interest at the statutory legal rate of 10% pursuant to Section 3289(b) of the California Civil Code, awards of costs and attorneys' fees pursuant to Section 1021.5 of the California

Civil Code, and punitive damages in an amount sufficient to punish and deter Defendants.

6.     Plaintiff also seeks injunctive relief to enjoin Defendants' unfair, unlawful, and fraudulent business acts and practices, including an order prohibiting Defendants from continuing to offer and sell unregistered, non-exempt securities.

## PARTIES

7.     Plaintiff Crypto Asset Fund, LLC ("CAF") is a Delaware limited liability company with members, including its managing member, who reside in San Diego County, California.

8.     Plaintiff is informed and believes that defendant Hoard, Incorporated ("Hoard") is a Delaware corporation with its principal place of business in North Carolina.

9.     Plaintiff is informed and believes that defendant Jason Davis is the CEO of Hoard who resides in North Carolina or elsewhere in the United States.

10.     Plaintiff is ignorant of the true names and capacities of the Defendants sued herein as Does 1 – 10 and therefore sue said Defendants by such fictitious names.  Plaintiff will amend this Complaint to allege the true names and capacities when the same has been ascertained.  All of the Doe Defendants and each of them were the agents and principals of all of the other defendants and were acting in the course and scope of their authority and in concert with one another.

## VENUE

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, 15 U.S.C. § 77v, and 15 U.S.C. § 78aa because:  (a) the conduct at issue took place and had an effect in this judicial District; (b) a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District; and (c) Defendants have received substantial compensation and other transfers of money by transacting business in this District and engaging in activities that have an effect in this District.

**FACTUAL ALLEGATIONS**

12.     On July 25, 2017, the Securities and Exchange Commission ("SEC") issued an investigative report (commonly referred to as the "DAO Report") cautioning market participants that offers and sales of digital assets conducted by organizations using distributed ledger or blockchain technology are subject to the requirements of the federal securities laws. The SEC explained that "[s]uch offers and sales, have been referred to, among other things, as 'Initial Coin Offerings' or 'Token Sales.'"[1]

13.     In 2018, Defendants conducted an initial coin offering for "OAR tokens" to be used on the "Hoard" network that Defendants represented to Plaintiff they were building out for launch and eventual widescale utilization and mass market adoption as a means of transferring cryptocurrencies between users.  Davis came from a banking background and Defendants billed their beta app as "the Venmo of Crypto."  Defendants offered and sold OAR tokens without registering with the SEC.  The OAR tokens are securities, however, and no applicable exemption existed which excused Defendants from the federal registration requirements or state registration requirements where Defendants were offering and selling these OAR token securities (for example, as relevant to Plaintiff in this action, in California).  Indeed, the purchase agreement utilized by Defendants acknowledges that OAR tokens are securities and that "[t]he Purchaser enters into this Agreement with the predominant expectation that he, she or it, as the case may be, will profit upon the successful development and Network Launch arising from the efforts of the Company and its employees to develop and market the Network and the Network Launch and related sale of the Tokens."

14.     In or about May 2018, Plaintiff and Defendants entered into an agreement whereby Plaintiff purchased OAR tokens for $175,000.00 as part of one

---

[1] https://www.sec.gov/news/press-release/2017-131

of "2 private tranches" of OAR token sales which Defendants represented would be followed by a public offering.  In a successful effort to extract much needed cash from Plaintiff, Hoard CEO Davis had warned Plaintiff at the end of April:  "Both rounds are running concurrently. We're open for contributions now. We're closing when they are filled. You've got some time but do not delay. Our broker dealer partners are about to make some big swings in May to close the sale out."  Davis continued his aggressive pitch: "Expecting $500k-$1m to come in this week. Double that next week. Middle of May it should be balls to the wall. Your timing is impeccable."

15.     On or about April 11, 2019, the SEC released a "Spotlight on Initial Coin Offerings (ICOs)" in which it noted that "[c]ompanies and individuals are increasingly considering initial coin offerings (ICOs) as a way to raise capital or participate in investment opportunities" which "bring increased risk of fraud and manipulation because the markets for these assets are less regulated than traditional capital markets."  Among the "5 things you need to know about ICOs" per the SEC were the fact that "ICOs can be securities offerings," "they may need to be registered," and "ICOs may pose substantial risks."  The SEC also reiterated its position set forth in the DAO Report:  "As SEC Chairman Jay Clayton has stated, tokens and offerings that feature and market the potential for profits based on the entrepreneurial or managerial efforts of others contain the hallmarks of a security under U.S. law."[2]

16.     In July 2019, when Plaintiff attempted to follow up with Defendants regarding the status of its investment, it received a notification from Google saying that the message was undeliverable because Davis had apparently disabled his jason@hoardinvest.com email address.  Defendants never publicly launched the Hoard network and never took the myriad necessary steps in that direction which

---

[2] https://www.sec.gov/ICO

they represented to Plaintiff they had the ability to take and intended to take in order to induce Plaintiff to purchase the OAR token securities **which are now worthless and have no practical application or use**.  Hoard's website has also been disabled and its industry standard "whitepaper" has similarly been removed from the internet by Defendants.

17.     Among other indicia of a securities offering, Defendants touted that the OAR tokens received in exchange for investors' investments would be worth more than the moneys they paid.  Additionally, Defendants created a sense of urgency for investors including Plaintiff to make their investments to capitalize on the profit potential of the investment.  Plaintiff and other investors reasonably expected that the value of OAR tokens received in exchange for their investments would grow as the result of Hoard's successful launch and cultivation of its network.

18.     Under the federal securities laws, the definition of a security includes an "investment contract."  The United States Supreme Court has defined "investment contract" as a contract, transaction, or scheme whereby a person invests his or her money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party.  *S.E.C. v. Howey*, 328 U.S. 293, 299 (1946).

19.     Plaintiff and other investors invested their money in OAR tokens.  Investors paid either U.S. dollars or with cryptocurrency such as Ether to purchase their OAR tokens from Defendants.  Such an investment is the type of contribution of value that creates an investment contract.

20.     By purchasing OAR tokens, Plaintiff joined Defendants in the "common enterprise" of establishing the Hoard network, where OAR tokens would be the established and sole "currency."

21.     Through their words and actions, Defendants led investors including Plaintiff to expect a profit from the purchase of OAR tokens.  Defendants introduced OAR tokens as the exclusive means of utilizing the Hoard network and made clear to potential investors that the tokens would be issued in a limited supply.  Potential

- 5 -

investors logically concluded that the development and growth of the Hoard network would create additional demand for OAR tokens and increase their value.

22.     When Plaintiff invested in OAR tokens, the Hoard network had no practical functionality and had not been launched for public use.  Plaintiff had no power to bring about the full implementation of the platform, and it relied on Defendants' managerial and entrepreneurial efforts to make the network fully available to the public, as Defendants had promised.

23.     Defendants have sole control over the money they raised through sales of OAR tokens and the management of those funds in connection with the Hoard network.

24.     OAR token investors had to rely on Defendants to: (a) market the sale of OAR tokens and generate publicity by posting on message boards, social media, and other outlets, and (b) raise the necessary funding to finance the build out of the Hoard network.  Investors have to rely on Defendants to: (a) manage the funds that have been raised from OAR token investors, (b) develop and build the Hoard network, and (c) market the Hoard network concept to potential users and seek mass adoption of the platform.

25.     Investors in the OAR tokens had no power or control over their investments once they handed their payment over to Defendants.  Defendants controlled all pertinent information about the company, managed the development of the network which they have apparently abandoned, and chose what types of information to provide to investors and when that information was disseminated.

26.     The requirements of the Securities Act, the Exchange Act, and the California Securities Law are designed to protect investors by ensuring that they are provided adequate, truthful, and materially complete information upon which to base their investment decisions.  California's Unfair Competition Law is an important law enforcement tool designed to protect consumers from unfair,

unlawful, and fraudulent business acts and practices and to deter and punish wrongdoing.

27.     Through this action, Plaintiff seeks relief for itself, to protect California consumers, and to deter and punish Defendants' wrongdoing.

## CLAIMS ALLEGED

## COUNT 1
### Violation of the Securities Act (15 U.S.C. § 77l(a)(2))
### (Against All Defendants)

28.     Plaintiff repeats and re-alleges each and every allegation above as if set forth herein.

29.     The Securities Act prohibits the offer and sale of a security by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading.

30.     The Securities Act grants Plaintiff a private right of action for damages against Defendants for their violations of this provision.

31.     In marketing the OAR token to prospective investors, including Plaintiff, Defendants unlawfully made use of means or instruments of transportation or communication in interstate commerce or of the mails or by means of a prospectus or oral communication to make an untrue statement of material fact and/or omitted to state a material fact necessary in order to make their statements, in light of the circumstances they were made, not misleading.

32.     Defendants "offered" and "sold" securities within the meaning of the Securities Act because they solicited Plaintiff's and others' investments in the Hoard network and OAR tokens, actively and knowingly participated in the offer and sale

of OAR tokens to Plaintiff and others, and/or offered or sold OAR tokens they held or controlled to Plaintiff.  OAR tokens are not subject to any applicable exemption.

33.    By reason of the foregoing, Defendants have violated 15 U.S.C. §§ 77l(a)(2).

34.    Defendants' violations of the Securities Act were a substantial factor in causing Plaintiff damages in connection with its purchase of OAR token securities. As such, Defendants are liable to Plaintiffs for compensatory damages or rescission.

## COUNT 2
**Violation of the Securities Act (15 U.S.C. § 77o(a))**
**(Against Jason Davis)**

35.    Plaintiff repeats and re-alleges each and every allegation above as if set forth herein.

36.    Section 15 of the Securities Act provides for joint and several liability for "controlling persons" who had sufficient power or influence over a person or entity that violated federal securities laws:

> Every person who, by or through stock ownership, agency, or otherwise, or who, pursuant to or in connection with an agreement or understanding with one or more other persons by or through stock ownership, agency, or otherwise, controls any person liable under section 77k or 77l of this title, shall also be liable jointly and severally with and to the same as extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person had no knowledge of or reasonable ground to believe in the existence of the facts by reason of which the liability of the controlled person is alleged to exist.

15 U.S.C. § 77o(a).

- 8 -
COMPLAINT AND DEMAND FOR JURY TRIAL

37.     Defendant Jason Davis is subject to liability by virtue of his top-level executive position with Hoard and his significant influence and supervisory authority over it.  Jason Davis is a "controlling person" within the meaning of Section 15(a) of the Securities Act, 15 U.S.C. § 77o.

38.     Davis' role as a "controlling person" of entities or persons who violated Section 15 of the Securities Act was a substantial factor in causing Plaintiffs damages.

## COUNT 3
### Violation of the Securities Act (15 U.S.C. § 77q(a))
### (Against All Defendants)

39.     Plaintiff repeats and re-alleges each and every allegation above as if set forth herein.

40.     The Securities Act prohibits the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly (1) to employ any device, scheme, or artifice to defraud, or (2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.  15 U.S.C. § 77q(a).

41.     Defendants unlawfully used interstate commerce and/or the mails to employ a device, scheme, or artifice to defraud purchasers of OAR tokens, to obtain money or property from those purchasers by means of untrue statements of material facts and omissions to state material facts necessary in order to make the statements they made, in light of the circumstances under which they were made, not misleading, and to engage in transactions, practices, and courses of business which operated and operate as a fraud or deceit upon the purchasers of OAR tokens.

42.     By reason of the foregoing, Defendants have violated 15 U.S.C. §§ 77q(a).

43.     Defendants' violations of the Securities Act were a substantial factor in causing Plaintiff damages in connection with its purchase of OAR token securities. As such, Defendants are liable to Plaintiff for compensatory damages or rescission.

## COUNT 4
## Violation of the Exchange Act (15 U.S.C. § 78j(b) & 17 CFR § 240.10b-5 )
## (Against All Defendants)

44.     Plaintiff repeats and re-alleges each and every allegation above as if set forth herein.

45.     The Exchange Act prohibits the direct or indirect use of any means or instrumentality of interstate commerce or of the mails (a) To employ any device, scheme, or artifice to defraud, (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

46.     Defendants knowingly and intentionally or recklessly used interstate commerce and/or the mails to employ a device, scheme, or artifice to defraud investors, to obtain money or property from investors by means of untrue statements of material facts and omissions to state material facts necessary in order to make the statements they made, in light of the circumstances under which they were made, not misleading, and to engage in transactions, practices, and courses of business which operated and operate as a fraud or deceit upon the purchasers of OAR tokens.

47.     Plaintiff reasonably relied to its detriment on the material misrepresentations made by Defendants and upon the expectation that they would disclose all material facts relating to Plaintiff's potential and actual investment in

OAR tokens, including all material facts regarding their ability and plans to release and distribute OAR tokens to investors for use on the Hoard network.

48.     Defendants' lack of appropriate preparation for, intentional and concealed use of limited resources including time and money, and failed, if even attempted, execution of the token sale and launch of a functioning network proximately caused Plaintiff damages, including the complete loss of its principal investments and lost profits.

49.     By reason of the foregoing, Defendants have violated 15 U.S.C. §§ 77q(a) and are liable to Plaintiff for compensatory damages or rescission.

## COUNT 5
### Violation of the Exchange Act (15 U.S.C. § 78t)
### (Against Jason Davis)

50.     Plaintiffs repeat and re-allege each and every allegation above as if set forth herein.

51.     The Exchange Act provides for joint and several liability for "controlling persons" who had sufficient power or influence over a person or entity that violated federal securities laws:

> Every person who, directly or indirectly, controls any
> person liable under any provision of this chapter or of
> any rule or regulation thereunder shall also be liable
> jointly and severally with and to the same extent as such
> controlled person to any person to whom such controlled
> person is liable (including to the Commission in any
> action brought under paragraph (1) or (3) of section
> 78u(d) of this title), unless the controlling person acted in
> good faith and did not directly or indirectly induce the act
> or acts constituting the violation or cause of action.

15 U.S.C. § 78t.

- 11 -
COMPLAINT AND DEMAND FOR JURY TRIAL

52.     Defendant Jason Davis is subject to liability by virtue of his top-level executive position with Hoard and his significant influence and supervisory authority over it.  Davis is a "controlling person" within the meaning of Section 15(a) of the Securities Act, 15 U.S.C. § 78t.

53.     As a "controlling person," Davis proximately caused Plaintiff damages.

**COUNT 6**
**Violation of Cal. Corp. Code § 25110**
**(Against All Defendants)**

54.     Plaintiff repeats and re-alleges each and every allegation above as if set forth herein.

55.     It is unlawful for any person to offer or sell in California any security in an issuer transaction that is subject to qualification but has not been qualified and is not exempt.

56.     Defendants "offered" and "sold" securities within the meaning of the Corporate Securities Law of 1968 because they solicited Plaintiffs' and others' investments in the OAR tokens, actively and knowingly participated in the offer and sale of OAR tokens to Plaintiff and others, and/or offered or sold OAR tokens they held or controlled to Plaintiff.

57.     By reason of the foregoing, Defendants have violated Cal. Corp. Code § 25110.

58.     Pursuant to Cal. Corp. Code § 25503, Plaintiff is entitled to rescission to recover the consideration paid for the OAR token securities, plus interest at the legal rate of 10%.

**COUNT 7**
**Violation of Cal. Corp. Code § 25130**
**(Against All Defendants)**

59.     Plaintiffs repeat and re-allege each and every allegation above as if set forth herein.

60.     It is unlawful for any person to offer or sell in California any security in a nonissuer transaction that is subject to qualification but has not been qualified and is not exempt.

61.     Defendants "offered" and "sold" securities within the meaning of the Corporate Securities Law of 1968 because they solicited Plaintiff's and others' investments in OAR tokens, actively and knowingly participated in the offer and sale of OAR tokens to Plaintiff and others, and/or offered or sold OAR tokens they held or controlled to Plaintiff.

62.     By reason of the foregoing, Defendants have violated Cal. Corp. Code § 25130.

63.     Pursuant to Cal. Corp. Code § 25503, Plaintiff is entitled to rescission to recover the consideration paid for the OAR token securities, plus interest at the legal rate of 10%.

**<u>COUNT 8</u>**
**Violation of Cal. Corp. Code § 25504**
**(Against Jason Davis)**

64.     Plaintiff repeats and re-alleges each and every allegation above as if set forth herein.

65.     Every person who directly or indirectly controls a person liable under Section 25501 or 25503, every partner in a firm so liable, every principal executive officer or director of a corporation so liable, every person occupying a similar status or performing similar functions, every employee of a person so liable who materially aids in the act or transaction constituting the violation, and every broker-dealer or agent who materially aids in the act or transaction constituting the violation, are also liable jointly and severally with and to the same extent as such person, unless the other person who is so liable had no knowledge of or reasonable grounds to believe in the existence of the facts by reason of which the liability is alleged to exist.

66.     Defendant Jason Davis is subject to liability by virtue of his top-level executive position with Hoard and his significant influence and supervisory authority over it.  Jason Davis is a "controlling person" within the meaning of the California Securities Law.

67.     As a "controlling person," Davis jointly and severally liable to Plaintiff.

## COUNT 9
### Violation of Cal. Corp. Code § 25401
### (Against All Defendants)

68.     Plaintiff repeats and re-alleges each and every allegation above as if set forth herein.

69.     It is unlawful for any person to offer or sell a security in this state, or to buy or offer to buy a security in this state, by means of any written or oral communication that includes an untrue statement of a material fact or omits to state a material fact necessary to make the statements made, in the light of the circumstances under which the statements were made, not misleading.

70.     Defendants offered and sold securities in California within the meaning of the California Securities Law by means of written and oral communications that included untrue statements of material fact and which omitted to state material facts necessary to make the statements made, in the light of the circumstances under which the statements were made, not misleading.

71.     By reason of the foregoing, Defendants have violated Cal. Corp. Code § 25401.

72.     Pursuant to Cal. Corp. Code § 25501, Plaintiff is entitled to rescission to recover the consideration paid for the OAR token securities, plus interest at the legal rate of 10%.

COMPLAINT AND DEMAND FOR JURY TRIAL

## COUNT 10

**Unfair Business Acts or Practices (Cal. Bus. & Prof. Code §§ 17200 *et seq*.)**
**(Against All Defendants)**

73.     Plaintiff repeats and re-alleges each and every allegation above as if set forth herein.

74.     The acts and practices of Defendants offend established public policy and/or are immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.  Defendants therefore engaged in unfair business acts and practices within the meaning of Cal. Bus. & Prof. Code §§17200 *et seq*.

75.     Defendants' unfair business acts or practices were a substantial factor in causing Plaintiff to lose money or property in which it had a vested interest.

76.     Plaintiff is entitled to recover restitution and disgorgement of profits and seeks injunctive relief to enjoin Defendants' unfair business acts and practices which are ongoing.

## COUNT 11

**Unlawful Business Acts or Practices (Cal. Bus. & Prof. Code §§ 17200 *et seq*.)**
**(Against All Defendants)**

77.     Plaintiff repeats and re-alleges each and every allegation above as if set forth herein.

78.     By violating various statutes, rules, and regulations, including without limitation those referenced above and 15 U.S.C. § 77e(a), 15 U.S.C. § 77e(c), Defendants engaged in unlawful business practices within the meaning of Cal. Bus. & Prof. Code §§17200 *et seq*.

79.     Defendants' unlawful business acts or practices were a substantial factor in causing Plaintiff to lose money or property in which it had a vested interest.

80.     Plaintiff is entitled to recover restitution and disgorgement of profits and seeks injunctive relief to enjoin Defendants' unlawful business acts and practices which are ongoing.

**<u>COUNT 12</u>**
**Fraudulent Business Acts or Practices (Cal. Bus. & Prof. Code §§ 17200 *et seq*.)**
**(Against All Defendants)**

81.     Plaintiff repeats and re-alleges each and every allegation above as if set forth herein.

82.     Defendants' business acts or practices were likely to deceive consumers and therefore Defendants engaged in fraudulent business practices within the meaning of Cal. Bus. & Prof. Code §§17200 *et seq.*

83.     Defendants' fraudulent business acts or practices were a substantial factor in causing Plaintiff to lose money or property in which it had a vested interest.

84.     Plaintiff is entitled to recover restitution and disgorgement of profits and seek injunctive relief to enjoin Defendants' unlawful business acts and practices which are ongoing.

**<u>COUNT 13</u>**
**Breach of Contract**
**(Against Hoard, Incorporated)**

85.     Plaintiff repeats and re-alleges each and every allegation above as if set forth herein.

86.     Pursuant to Hoard's offer to sell OAR tokens, Plaintiff and Hoard entered into an agreement whereby Plaintiff purchased OAR tokens from Defendants.

87.     Plaintiff did all, or substantially all, of the significant things that the agreements required or was excused from having to do so.

88.     Hoard breached its obligations under the agreement.

89.     Hoard's breaches of contract were a substantial factor in causing Plaintiff damages.

1
2
3

## COUNT 14
**Breach of the Covenant of Good Faith and Fair Dealing**
**(Against Hoard, Incorporated)**

4
5

90.     Plaintiff repeats and re-alleges each and every allegation above as if set forth herein.

6
7
8
9

91.     Under California law, every contract has an implied covenant of good faith and fair dealing which requires that the parties refrain from doing anything to unfairly interfere with the right of the other party to receive the benefits of the contract.

10
11
12

92.     Hoard breached the covenant of good faith and fair dealing when it failed to build and launch its network, and failed to release and distribute functional OAR tokens to investors including Plaintiff.

13
14

93.     Hoard's breaches of the covenant of good faith and fair dealing were a substantial factor in causing Plaintiff damages.

15
16
17

## COUNT 15
**Unjust Enrichment**
**(Against All Defendants)**

18
19

94.     Plaintiff repeats and re-alleges each and every allegation above as if set forth herein.

20
21
22

96.     As a result of their failure to build and launch the Hoard network and failure to release and distribute functional OAR tokens to investors including Plaintiff, Defendants have been unjustly enriched at the expense of Plaintiff.

23
24
25

97.     Plaintiff is entitled to recover monies from Defendants to remedy such unjust enrichment, including the return of all purchase proceeds, reimbursement for services rendered, and pre-judgment interest at the statutory legal rate of 10%.

26
27
28

- 17 -
COMPLAINT AND DEMAND FOR JURY TRIAL

**COUNT 16**
**Conversion**
**(Against All Defendants)**

98.    Plaintiff repeats and re-alleges each and every allegation above as if set forth herein.

99.    Plaintiff had a right to have Defendants devote the proceeds of its and other investors' investments to development of the network and to the successful completion of a token sale and distribution of OAR tokens.

100.   Defendants intentionally and substantially interfered with Plaintiff's right by failing to develop the network and by preventing Plaintiff from having access to OAR tokens of any value or at all.

101.   Defendants did so without Plaintiff's consent.

102.   Defendants' conduct was a substantial factor in causing Plaintiff harm. In addition to seeking compensatory damages, because of the malicious, oppressive, and fraudulent nature of the conduct of Defendants, Plaintiff also seeks punitive damages in an amount sufficient to punish and deter them.

**COUNT 17**
**Promissory Estoppel**
**(Against All Defendants)**

103.   Plaintiff repeats and re-alleges each and every allegation above as if set forth herein.

104.   Defendants made a promise to build and launch the network and to release and distribute valuable OAR tokens to investors including Plaintiff.

105.   Defendants, however, did not intend to perform this promise when they made it.

106.   Defendants intended that Plaintiff rely on their promise.

107.   Plaintiff reasonably relied on Defendants' promise.

108.   Defendants did not build and launch the network or release and distribute functional OAR tokens to investors including Plaintiff.

109.   Plaintiff's reliance on Defendants' promise was a substantial factor in causing Plaintiff harm.

**COUNT 18**
**Fraud**
**(Against All Defendants)**

110.   Plaintiff repeats and re-alleges each and every allegation above as if set forth herein.

111.   Defendants had a duty to accurately and completely disclose material information to Plaintiff regarding its potential and actual investment in OAR tokens.

112.   Defendants induced Plaintiff to purchase OAR tokens by making material, false representations and/or omissions that they knew to be false and/or materially incomplete or which were made recklessly without regard for their truth.

113.   Defendants intended that Plaintiff rely on their misrepresentations.

114.   Plaintiff reasonably relied to its detriment on the material misrepresentations made by Defendants and upon the expectation that Defendants would disclose all material facts.

115.   Plaintiff's reliance was a substantial factor in causing Plaintiff damages.  In addition to seeking compensatory damages, because of the malicious, oppressive, and fraudulent nature of the conduct of Defendants, Plaintiff also seeks punitive damages in an amount sufficient to punish and deter them.

**COUNT 19**
**Negligent Misrepresentation**
**(Against All Defendants)**

116.   Plaintiff repeats and re-alleges each and every allegation above as if set forth herein.

- 19 -
COMPLAINT AND DEMAND FOR JURY TRIAL

117.   Defendants induced Plaintiff to purchase OAR tokens by making material misrepresentations and/or omissions for which they had no reasonable grounds to believe to be true and complete.

118.   Defendants intended that Plaintiff rely on their misrepresentations.

119.   Plaintiff reasonably relied to its detriment on the material misrepresentations made by Defendants and upon the expectation that they would disclose all material facts.

120.   Plaintiff's reliance was a substantial factor in causing Plaintiff damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment and relief as follows:

A. Declaring the sale of OAR tokens a security under the federal and state securities laws;

B. Declaring that Defendants offered and sold unregistered, non-exempt securities in violation of federal and state securities laws;

C.  Declaring that Defendants are liable to Plaintiff under the Securities Act, the Exchange Act, the California Securities Law, and California's Unfair Competition Law;

D. Awarding Plaintiff rescission;

E. Awarding compensatory damages, including lost profits;

F. Ordering Defendants to provide restitution and to disgorge profits to Plaintiff;

G. Awarding Plaintiff punitive damages in an amount sufficient to punish and deter Defendants;

H. Awarding Plaintiff pre- and post-judgment interest at the statutory legal rate of 10% pursuant to Section 3289(b) of the California Civil Code;

COMPLAINT AND DEMAND FOR JURY TRIAL

I.   Awarding Plaintiff attorneys' fees pursuant to Section 1021.5 of the California Civil Code;

J.   Awarding Plaintiff the costs of this action;

K.   Enjoining Defendants and each of them from continuing to offer and sell unregistered, non-exempt securities;

L.   Ordering such other and further relief as may be just and proper.

DATED:  March 6, 2020                    Respectfully Submitted,

                                        By: s/ Jeffrey N. Goldberg
                                        Email: jeff@jeffreyngoldberglaw.com

                                        JEFFREY N. GOLDBERG
                                        THE LAW OFFICES OF JEFFREY N.
                                        GOLDBERG, P.C.

                                        Attorney for Plaintiff
                                        Crypto Asset Fund, LLC

COMPLAINT AND DEMAND FOR JURY TRIAL

1

## <u>DEMAND FOR JURY TRIAL</u>

2         Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by

3    jury of all claims in this Complaint so triable.

4

5    DATED:  March 6, 2020                   Respectfully Submitted,

6
                                            By: s/ Jeffrey N. Goldberg
7                                           Email: jeff@jeffreyngoldberglaw.com

8
                                            JEFFREY N. GOLDBERG
9                                           THE LAW OFFICES OF JEFFREY N.
10                                          GOLDBERG, P.C.

11                                          Attorney for Plaintiff
12                                          Crypto Asset Fund, LLC

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT AND DEMAND FOR JURY TRIAL