**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CRYPTO ASSET FUND, LLC,<br><br>             Plaintiff,<br><br>v.<br><br>HOARD, INCORPORATED, and JASON DAVIS,<br><br>             Defendants. | Case No. 20-cv-438-MMA (AHG)<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**<br><br>[Doc. No. 11] |

Crypto Asset Fund, LLC ("Plaintiff") brings this action against Defendants Hoard, Incorporated ("Hoard") and Jason Davis ("Davis") (collectively, "Defendants"). *See* Doc. No. 1 ("Compl."). Plaintiff alleges nineteen causes of action: violations of the Securities Act of 1933 ("Securities Act") under 15 U.S.C. §§ 77*l*(a)(2), 77o(a), 77q(a); violations of the Securities Exchange Act of 1934 ("Exchange Act") under 15 U.S.C. §§ 78j(b), 78t; violations of the California Corporations Code under Cal. Corp. Code §§ 25110, 25130, 25504, 25401; unfair, unlawful, and fraudulent business acts or practices under Cal. Bus. & Prof. Code § 17200; breach of contract; breach of the covenant of good faith and fair dealing; unjust enrichment; conversion; promissory estoppel; fraud; and negligent misrepresentation. *See* Compl. ¶¶ 28–120.

1

On March 13, 2020, Plaintiff served Hoard's agent for service of process.  *See* Doc. No. 3 at 1.  On April 15, 2020, Plaintiff requested that the Clerk enter default against Hoard.  *See* Doc. No. 6.  On April 15, 2020, the Clerk entered default against Hoard.  *See* Doc. No. 7.  On April 20, 2020, Plaintiff served Davis.  *See* Doc. No. 8 at 1.  On May 12, 2020, Plaintiff requested that the Clerk enter default against Davis.  *See* Doc. No. 9.  On May 13, 2020, the Clerk entered default against Davis.  *See* Doc. No. 10.

Plaintiff now moves for default judgment against Defendants.  *See* Doc. No. 11 at 2.  The motion is unopposed.  The Court found the matter suitable for determination on the papers and without oral argument.  *See* Doc. No. 12; *see also* Fed. R. Civ. P. 78(b); CivLR 7.1.d.1.  For the reasons set forth below, the Court **DENIES** Plaintiff's motion without prejudice.

## I. BACKGROUND

Plaintiff is a Delaware limited liability company with members who reside in San Diego County, California.  Compl. ¶ 7.  Hoard is a Delaware corporation and has its principal place of business in North Carolina.  *Id.* ¶ 8.  Davis is the Chief Operating Officer of Hoard and resides in "North Carolina or elsewhere in the United States."  *Id.* ¶ 9.

"In 2018, Defendants conducted an initial coin offering for 'OAR tokens' to be used on the 'Hoard' network that Defendants represented to Plaintiff they were building out for launch and eventual widescale utilization and mass market adoption as a means of transferring cryptocurrencies between users."  *Id.* ¶ 13.[1]  Davis has a banking background, and Defendants advertised "their beta app as 'the Venmo of Crypto.'"  *Id.*  Without registering with the SEC, Defendants "offered and sold OAR tokens."  *Id.*

---

[1] "Cryptocurrency" is defined as "[a] digital or virtual currency that is not issued by any central authority, is designed to function as a medium of exchange, and uses encryption technology to regulate the generation of units of currency, to verify fund transfers, and to prevent counterfeiting."  *Cryptocurrency*, Black's Law Dictionary (11th ed. 2019).

2

20-cv-438-MMA (AHG)

Plaintiff claims that OAR tokens are securities that do not fall under a federal or state registration exemption. *Id.* Plaintiff further alleges that the purchase agreement ("Agreement") "acknowledges that OAR tokens are securities." *Id.*; *see also* Doc. No. 11-3 (providing the Agreement).

Plaintiff alleges that Defendants made a "successful effort" to extract cash from Plaintiff. Compl. ¶ 14. In late April 2018, Davis told Plaintiff the following:

> "Both rounds are running concurrently. We're open for contributions now. We're closing when they are filled. You've got some time but do not delay. Our broker dealer partners are about to make some big swings in May to close the sale out." Davis continued his aggressive pitch: "Expecting $500k-$1m to come in this week. Double that next week. Middle of May it should be balls to the wall. Your timing is impeccable."

*Id.* In May 2018, Plaintiff and Defendants entered into an Agreement where "Plaintiff purchased OAR tokens for $175,000.00 as part of one of '2 private tranches' of OAR token sales which Defendants represented would be followed by a public offering." *Id*. However, Kyle Chaykowski, Plaintiff's Chief Financial Officer ("CFO"), declares that "[o]n May 15, 2018, Plaintiff sent Defendants $175,000 *in the form of Ethereum*." Chaykowski Decl. Doc. No. 11-2 ¶ 3 (emphasis added); *see also* Doc. No. 11-1 at 2.[2]

In July 2019, Plaintiff attempted to follow up with Defendants. Compl. ¶ 16. In response, Plaintiff received a notification that "the message was undeliverable because Davis had apparently disabled his . . . email address." *Id.* Defendants failed to publicly launch the Hoard network and "never took the myriad necessary steps in that direction which they represented to Plaintiff they had the ability to take and intended to take in order to induce Plaintiff to purchase the OAR token securities which are now worthless

---

[2] Plaintiff alleges that "Plaintiff and other investors invested their money in OAR tokens. Investors paid either U.S. dollars or with *cryptocurrency such as Ether* to purchase their OAR tokens from Defendants. Such an investment is the type of contribution of value that creates an investment contract." Compl. ¶ 19 (emphasis added).

20-cv-438-MMA (AHG)

and have no practical application or use." *Id.* (emphasis omitted). Hoard's website is now disabled, and "its industry standard 'whitepaper'" is no longer available. *Id.*

Plaintiff's CFO further declares that on March 17, 2020, Davis sent Plaintiff's CFO "a two-word message via the Telegram app which stated: 'Hey, Kyle.'" Chaykowski Decl. Doc. No. 11-2 ¶ 4. The CFO notes that this was the first contact from Davis in about thirteen months. *See id.* The CFO replied to Davis on March 20, 2020 and stated that communication should be directed to Plaintiff's counsel; the CFO received no further communication from Davis. *Id.* ¶¶ 5–6.

Defendants emphasized that the OAR tokens—as received in exchange for investments—would be worth more than the original investment. *See* Compl. ¶ 17. Defendants created "a sense of urgency" for Plaintiff to invest to ensure gains. *Id.* Plaintiff expected that the OAR tokens' value would increase "as the result of Hoard's successful launch and cultivation of its network." *Id.* Plaintiff claims that its investment in OAR tokens in exchange for "U.S. dollars or with cryptocurrency such as Ether" constituted an investment contract, which falls under the definition of a security. *Id.* ¶¶ 18–19.

Defendants led Plaintiff to expect a profit from its investment in OAR tokens given that Defendants "introduced OAR tokens as the exclusive means of utilizing the Hoard network and made clear to potential investors that the tokens would be issued in a limited supply." *Id.* ¶ 21. When Plaintiff invested in OAR tokens, Defendants' Hoard network was not functional or publicly launched. *Id.* ¶ 22. After investment, Plaintiff had no control over its investments or the network. *See id.* ¶¶ 23–25.

Plaintiff now moves for default judgment jointly and severally against Defendants. *See* Doc. No. 11-1 at 2.

> Plaintiff seeks a judgment holding Defendants jointly and severally liable to return *such amount,* plus prejudgment interest from May 15, 2018 through the date of entry of judgment at the California statutory legal rate of 10% . . .

20-cv-438-MMA (AHG)

plus post-judgment interest at that rate or, if otherwise applicable, the federal post-judgment rate.

*Id.* (emphasis added).[3]  Plaintiff's motion does not specify the causes of action for which it seeks default judgment.  In support of its motion, Plaintiff has filed a memorandum of points and authorities that is less than two pages of substance in length.  *See* Doc. No. 11-1 at 2–3.  Plaintiff includes the declaration of Plaintiff's CFO that attaches the underlying Agreement.  Chaykowski Decl., Doc. No. 11-2; Doc. No. 11-3.  Plaintiff also includes the declaration of its counsel, noting that he has not received communication from Defendants.  Goldberg Decl., Doc. No. 11-4.

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 55(b), the Court may enter default judgment against a defendant who has failed to plead or otherwise defend an action.  *See* Fed. R. Civ. P. 55(b).  The Ninth Circuit has provided seven factors for consideration by the district court in exercising its discretion to enter default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986) (citing 6 Moore's Federal Practice ¶ 55–05[2], at 55–24 to 55–26).  When assessing a motion for default judgment, all factual allegations in the complaint are taken as true, except those with regard to

---

[3] As to the meaning of "such amount," the Court looks to the previous sentence that states "[o]n May 15, 2018, Plaintiff sent Defendants *$175,000.00 in the form of Ethereum*."  Doc. No. 11-1 at 2 (emphasis added) (citing Chaykowski Decl., Doc. No. 11-2 ¶ 3).

damages. *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (quoting *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)).

## III. DISCUSSION

### A. Jurisdiction and Procedural Requirements

Courts have an affirmative duty to ensure the proper exercise of subject matter jurisdiction and personal jurisdiction when a party seeks default judgment. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). In this case, the Court grounds its subject matter jurisdiction in 28 U.S.C. § 1331, 15 U.S.C. §77v, and 15 U.S.C. § 78aa because the Complaint seeks relief under the Securities Act and Exchange Act.[4] This Court has supplemental jurisdiction over the state claims pursuant to 28 U.S.C. § 1367 if Plaintiff successfully pleads a valid federal claim. The Court is satisfied that Plaintiff has alleged facts sufficient to establish personal jurisdiction over Defendants. *See Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986). Plaintiff alleges that "Defendants solicited investors in this District and obtained money or valuable cryptocurrency from those investors, including Plaintiff." Compl. ¶ 2; *see also* Doc. No. 11-3 (stating that Plaintiff's address is in La Jolla, California in the signature block of the parties' Agreement). The causes of action arise from a transaction resulting from Defendants soliciting and contracting with Plaintiff, and, thus, personal jurisdiction over Defendants is proper.

In addition, the Court must determine whether Defendants were properly served with notice of this action. Upon review of the proof of service filed with respect to Defendants, *see* Doc. Nos. 3, 8, the Court finds that Plaintiff effected service of process in conformity with Federal Rule of Civil Procedure 4.

Defendants were on notice as to what types of relief Plaintiff seeks in the instant motion: Plaintiff sought compensatory damages, restitution, prejudgment interest, and

---

[4] Although the Court finds that it has subject matter jurisdiction to the extent that Plaintiff states a valid federal claim under federal question jurisdiction, the Court's subsequent analysis reveals that Plaintiff currently fails to sufficiently plead its federal claims. *See infra* Section III.B.2.

6

postjudgment interest.  *See* Compl. at 21.  Accordingly, the Court finds that Plaintiff has complied with the procedural prerequisites for entry of default judgment.  *See* Fed. R. Civ. P. 54(c), 55(b)(2); *Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1006 (C.D. Cal. 2014) (finding the procedural requirements of Rule 55 met where the plaintiff addressed each factor in his application for default judgment).

**B. The *Eitel* Factors**

The Court now assesses the seven *Eitel* factors to determine whether default judgment is warranted.

**1. Possibility of Prejudice to the Plaintiff**

"The first *Eitel* factor considers whether a plaintiff will suffer prejudice if a default judgment is not entered." *Vogel*, 992 F. Supp. 2d at 1007 (citing *PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002)); *see also Eitel*, 782 F.2d at 1471.  Defendants have failed to appear in this action.  Without default judgment, Plaintiff will be without a remedy against Defendants given their unwillingness to participate in the action.  *See* Sec. *& Exch. Comm'n v. Vazquez*, No. SACV 18-47-CJC (KESx), 2019 WL 8167922, at *3 (C.D. Cal. Dec. 11, 2019).  Therefore, this factor favors granting default judgment.

**2. Merits of Plaintiff's Substantive Claims and Sufficiency of the Complaint**

"The second and third *Eitel* factors 'require that a plaintiff state a claim on which [it] may recover.'" *Vogel*, 992 F. Supp. 2d at 1007 (quoting *PepsiCo, Inc.*, 238 F. Supp. 2d at 1175); *see also Eitel*, 782 F.2d at 1471; *Danning v. Lavine*, 572 F.2d 1386, 1388–89 (9th Cir. 1978) (examining an appeal of a default judgment based similarly to a Rule 12(b)(6) analysis).  Plaintiff's motion does not address the specific claims for which it seeks default judgment.  Thus, the Court assesses each claim in turn.

**i. Securities Act Claims**

Plaintiff alleges that Defendants violated the Securities Act under 15 U.S.C. §§ 77*l*(a)(2), 77o(a), 77q(a).  *See* Compl. ¶¶ 28–43.

**a. 15 U.S.C. § 77*l*(a)(2) (§ 12(a)(2) of the Securities Act)**

Section 77*l*(a)(2) provides the following:

Any person who . . . offers or sells a security (whether or not exempted by the provisions of section 77c of this title, other than paragraphs (2) and (14) of subsection (a) of said section), by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission, . . . shall be liable, subject to subsection (b), to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security.

15 U.S.C. § 77*l*(a)(2).  Thus, a plaintiff must plead the following elements:

(1) an offer or sale of a security, (2) by the use of a means or instrumentality of interstate commerce, (3) by means of a prospectus or oral communication, (4) that includes an untrue statement of material fact or omits to state a material fact that is necessary to make the statements not misleading.

*Miller v. Thane Int'l, Inc.*, 519 F.3d 879, 885 (9th Cir. 2008); *see also Rieckborn v. Jefferies LLC*, 81 F. Supp. 3d 902, 925 (N.D. Cal. 2015) (quoting *Maine State Ret. Sys. v. Countrywide Fin. Corp.*, No. 2:10-cv-302 MRP (MANx), 2011 WL 4389689, at *8 (C.D. Cal. May 5, 2011)).  The section "is a virtually absolute liability provision that does not require an allegation that defendants possessed scienter."  *Miller*, 519 F.3d at 886 (quoting *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 269 (3d Cir. 2006)).  "[T]he purchaser need not prove reliance on the misrepresentations."  *Id.*

20-cv-438-MMA (AHG)

However, § 77*l*(a)(2) is limited to public offerings.  In holding that the word "prospectus" refers to a public offering of securities, the Supreme Court noted "[§ 77*l*(a)(2)] contains language, *i.e.*, 'by means of a prospectus or oral communication,' that limits [§ 77*l*(a)(2)] to public offerings. . . . [T]he presence of limiting language in [§ 77*l*(a)(2)] requires a narrow construction."  *Gustafson v. Alloyd Co.*, 513 U.S. 561, 577, 584 (1995).[5]  The Court plainly stated that "[t]he intent of Congress and the design of the statute require that [§ 77*l*(a)(2)] liability be limited to public offerings."  *Id.* at 578; *see also Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 195 (1976) ("The Securities Act of 1933 . . . was designed to provide investors with full disclosure of material information concerning public offerings.").  Since *Gustafson*, courts have held that claims under § 77*l*(a)(2) apply only to public offerings.  *See In re Petrobras Sec. Litig.*, 116 F. Supp. 3d 368, 384 (S.D.N.Y. 2015); *Lopes v. Vieira*, 488 F. Supp. 2d 1000, 1021 (E.D. Cal. 2007); *In re Levi Strauss & Co. Sec. Litig.*, 527 F. Supp. 2d 965, 983 (N.D. Cal. 2007); *Stack v. Lobo*, 903 F. Supp. 1361, 1375 (N.D. Cal. 1995).

Here, Plaintiff alleges that the parties entered into the Agreement where "Plaintiff purchased OAR tokens for $175,000.00 *as part of one of '2 private tranches' of OAR token sales* which Defendants represented would be followed by a public offering." Compl. ¶ 14 (emphasis added).  By its own wording, Plaintiff alleges that the Agreement was a private transaction separate from a public offering.  *See id.*  Because § 77*l*(a)(2) is limited to public offerings, Plaintiff's claim premised on a private transaction fails to state a claim under § 77*l*(a)(2).  Even if the Court found ambiguity regarding whether the Agreement was a public offering, Plaintiff's allegations and brief motion fail to provide sufficient facts detailing that the offering was public.  *See Bridges*, 2015 WL 2438227, at *5 (detailing the factors as it relates to a public offering under § 77*l*(a)(2)); *see also*

---

[5] "The Supreme Court has also recognized the phrase 'oral communication' as used in the statute 'is restricted to oral communications that relate to a prospectus.'" *Bridges v. Geringer*, No. 5:13-cv-1290-EJD, 2015 WL 2438227, at *5 (N.D. Cal. May 21, 2015) (quoting *Gustafson*, 513 U.S. at 569).

20-cv-438-MMA (AHG)

*S.E.C. v. Murphy*, 626 F.2d 633, 644–45 (9th Cir. 1980) (detailing the original factors). Accordingly, Plaintiff fails to state a claim to under § 77*l*(a)(2). *See Lopes*, 488 F. Supp. 2d at 1024.

### b. 15 U.S.C. § 77o(a) (§ 15 of the Securities Act)

Section 77o(a) states the following:

> Every person who, by or through stock ownership, agency, or otherwise, or who, pursuant to or in connection with an agreement or understanding with one or more other persons by or through stock ownership, agency, or otherwise, controls any person liable under sections 77k or 77*l* of this title, shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person had no knowledge of or reasonable ground to believe in the existence of the facts by reason of which the liability of the controlled person is alleged to exist.

15 U.S.C. § 77o(a). "To establish a prima facie case of control-person liability, a plaintiff must prove [1] a primary violation of the federal securities laws, and [2] that the defendant exercised actual power or control over the primary violator." *Zakinov v. Ripple Labs, Inc.*, No. 18-cv-06753-PJH, 2020 WL 922815, at *13 (N.D. Cal. Feb. 26, 2020) (quoting *In re Harmonic, Inc., Sec. Litig.*, No. C 00-2287 PJH, 2006 WL 3591148, at *5 (N.D. Cal. Dec. 11, 2006)); *see also Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000); *Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1578 (9th Cir. 1990) ("Although [§ 77o] is not identical to [§ 78t], the controlling person analysis is the same"); *infra* Section III.B.2.ii.b.

Here, Plaintiff alleges that Davis "is the CEO of Hoard." Compl. ¶ 9. Davis signed the Agreement on behalf of Hoard under the title of "President & Chief Executive Officer." Doc. No. 11-3 at 8. Plaintiff's allegations reveal that its main, and perhaps only, contact with Hoard was through Davis. *See* Compl. ¶¶ 13, 14, 16; *see also* Chaykowski Decl., Doc. No. 11-2 ¶ 4. The Court finds that Plaintiff properly alleged Davis was a "controlling person" because of his positions within Hoard and his role in

forming the Agreement with Plaintiff.  *See In re Levi Strauss & Co. Sec. Litig.*, 527 F. Supp. 2d at 984.  However, despite Plaintiff sufficiently alleging control, Plaintiff's claim fails under the first prong.  Plaintiff does not state a viable primary violation against "any person liable under sections 77k or 77*l*."  15 U.S.C. § 77o(a).  Accordingly, Plaintiff fails to state a claim to under § 77o(a).

### c. 15 U.S.C. § 77q(a) (§ 17(a) of the Securities Act)

"Section 77q(a) makes it illegal to use instruments of interstate commerce to defraud or deceive purchasers of securities."  *United States v. English*, 92 F.3d 909, 914 (9th Cir. 1996); *see also Vazquez*, 2019 WL 8167922, at *3 (citing 15 U.S.C. § 77q(a)).  However, § 77q(a) does not permit a private right of action.  *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 823 F.2d 1349, 1358 (9th Cir. 1987); *see also Hollinger*, 914 F.2d at 1578 (affirming a summary judgment order because § 77q(a) does not give rise to a private right of action).  Accordingly, because § 77q(a) does not permit a private cause of action, Plaintiff fails to state a claim under § 77q(a).

### ii. Exchange Act Claims

Plaintiff alleges that Defendants violated the Exchange Act under 15 U.S.C. §§ 78j(b), 78t.  *See* Compl. ¶¶ 44–53.

### a. 15 U.S.C. § 78j(b) (§10(b) of the Exchange Act) [6]

The Exchange Act makes it unlawful for a person to "use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."  *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37 (2011) (quoting 15 U.S.C. § 78j(b)).  Implementing this provision, Rule 10b-5 makes it unlawful, in connection to the transaction of securities, "[t]o employ any device, scheme, or artifice to

---

[6] Plaintiff's allegations under 15 U.S.C. § 78j(b) also include allegations under the corresponding regulation at 17 C.F.R. § 240.10b-5.  *See* Compl. ¶¶ 44–49.

defraud," "[t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading," or "[t]o engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person." 17 C.F.R. § 240.10b-5. To prevail on a private action under §§ 78j(b) or Rule 10b-5, a plaintiff must prove "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Matrixx Initiatives, Inc.*, 563 U.S. at 37–38 (quoting *Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*, 552 U.S. 148, 157 (2008)); *see also Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008 (9th Cir. 2018) (quoting *Stoneridge Inv. Partners, LLC*, 552 U.S. at 157). Despite the statute and regulation not explicitly creating a private right of action, the "[Supreme Court] has held that 'a private right of action is implied under § 10(b).'" *Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011) (quoting *Superintendent of Ins. of State of N. Y. v. Bankers Life & Cas. Co.*, 404 U.S. 6, 13 n.9 (1971)).

"To state a claim, a complaint alleging claims under section 10(b) and Rule 10b–5 must not only meet the requirements of Rule 8, but must satisfy the heightened pleading requirements of both Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act ('PSLRA')." *In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869, 876 (9th Cir. 2012) (citing *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009)); *see also* 15 U.S.C. § 78u-4(b)(1). Under Rule 9(b), "'[a]verments of fraud must be accompanied by "the who, what, when, where, and how" of the misconduct charged.' A party alleging fraud must 'set forth more than the neutral facts necessary to identify the transaction.'" *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (citation omitted) (first quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003); and then quoting *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994), *superseded by statute on other grounds*). The PSLRA requires "more

exacting pleading requirements" than Rule 9(b). *Zucco Partners, LLC*, 552 F.3d at 990 (citing *Gompper v. VISX, Inc.*, 298 F.3d 893, 895 (9th Cir. 2002)).

> Under the PSLRA, to properly allege falsity, a securities fraud complaint must now "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, . . . state with particularity all facts on which that belief is formed."

*In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d at 877 (quoting 15 U.S.C. § 78u-4(b)(1)). A plaintiff alleges falsity when "point[ing] to defendant's statements that directly contradict what the defendant knew at that time." *Khoja*, 899 F.3d at 1008; *see also Ronconi v. Larkin*, 253 F.3d 423, 431 (9th Cir. 2001) (holding that plaintiffs failed to state a claim where they did not detail facts or evidence indicating why a statement was false "at the time it was made" and failed to show that defendants made the false statement knowingly or with deliberate recklessness). "Even if a statement is not false, it may be misleading if it omits material information." *Khoja*, 899 F.3d at 1008–09 (citing *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1054 (9th Cir. 2014)). Similarly, scienter requires the plaintiff to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d at 877 (quoting 15 U.S.C. § 78u-4(b)(2)(A)).

Plaintiff fails to plead falsity under § 78j(b) with the requisite particularity. To the extent that Plaintiff's allegations suggest falsity, such suggestive pleading fails to meet the rigors of Rule 9(b) or the PSLRA. The Court notes the following allegations that appear to involve representations by Defendants:

- Plaintiff alleges that Defendants represented that they were building out the Hoard network "for launch and eventual widescale utilization and mass market adoption as a means of transferring cryptocurrencies between users." Compl. ¶ 13; *see also id.* ¶ 16.

13

20-cv-438-MMA (AHG)

- Plaintiff claims that "Davis came from a banking background and Defendants billed their beta app as 'the Venmo of Crypto.'" *Id.* ¶ 13.

- Plaintiff alleges that Davis told Plaintiff the following: "'Both rounds are running concurrently. We're open for contributions now. We're closing when they are filled. You've got some time but do not delay. Our broker dealer partners are about to make some big swings in May to close the sale out.' Davis continued his aggressive pitch: 'Expecting $500k-$1m to come in this week. Double that next week. Middle of May it should be balls to the wall. Your timing is impeccable.'" *Id.* ¶ 14.

- Plaintiff claims that the Agreement recognizes that OAR tokens are securities and quotes from the Agreement that "[t]he Purchaser enters into this Agreement with the predominant expectation that he, she or it, as the case may be, will profit upon the successful development and Network Launch arising from the efforts of the Company and its employees to develop and market the Network and the Network Launch and related sale of the Tokens." *Id.* ¶ 13.

- Plaintiff avers that Defendants represented that the Agreement "would be followed by a public offering." *Id.* ¶ 14.

- Plaintiff alleges that "Defendants touted that the OAR tokens received in exchange for investors' investments would be worth more than the moneys they paid. Additionally, Defendants created a sense of urgency for investors including Plaintiff to make their investments to capitalize on the profit potential of the investment." *Id.* ¶ 17; *see also id.* ¶ 21.

Plaintiff fails to allege which specific statements, if any, were false or misleading under Rule 9(b) or the PSLRA at the time they were made. A generalized assertion that Defendants obtained money or property from Plaintiff through untrue statements, *see id* ¶ 46, is insufficient. Plaintiff must "specify each statement alleged to have been misleading[ and] the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1). Putting aside the PSLRA, Rule 9(b) still requires "particularized allegations of the circumstances constituting fraud," such as specifying the at-issue statement and why the statement was false or misleading at the time it was made. *See In*

*re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d at 877 (citing *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d at 1547–49). As excerpted above, Plaintiff alleges several representations made by Defendants. However, Plaintiff does not specify which representations were false or misleading when Defendants made them. Thus, Plaintiff fails to properly allege the first element for a § 78j(b) or Rule 10b-5 claim.

To bolster its claim, Plaintiff quotes from the Securities and Exchange Commission's website. *See* Compl. ¶ 15. From a page titled "Spotlight on Initial Coin Offerings (ICOs)," Plaintiff quotes that ICOs "bring increased risk of fraud and manipulation because the markets for these assets are less regulated than traditional capital markets." *Id.* Despite any increased risk of fraud surrounding ICOs, Defendants' dealings with Plaintiff do not automatically arise to the level of securities fraud when the facts merely involve cryptocurrency and a coin offering. Plaintiff must still plead the material misrepresentation or omission with sufficient specificity. *See In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d at 877 (quoting 15 U.S.C. § 78u-4(b)(1)). Accordingly, Plaintiff fails to state a claim to under § 78j(b) or Rule 10b-5.

### b. 15 U.S.C. § 78t (§ 20(a) of the Exchange Act)

The Exchange Act also provides the following:

> Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable (including to the Commission in any action brought under paragraph (1) or (3) of section 78u(d) of this title), unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

20-cv-438-MMA (AHG)

15 U.S.C. § 78t(a).[7]  "To be liable under section [§ 78t(a)], the defendants must be liable under another section of the Exchange Act."  *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 978 (9th Cir. 1999) (footnote omitted); *see also Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1161 (9th Cir. 1996); *Kyung Cho v. UCBH Holdings, Inc.*, 890 F. Supp. 2d 1190, 1205 (N.D. Cal. 2012).  Thus, liability under § 78t(a) requires that the plaintiff prove (1) "a primary violation of federal securities laws" and (2) "the defendant exercised actual power or control over the primary violator."  *Howard*, 228 F.3d at 1065.  "In general, the determination of who is a controlling person for purposes of liability under 15 U.S.C. § 78t is an intensely factual question."  *Arthur Children's Tr. v. Keim*, 994 F.2d 1390, 1396 (9th Cir. 1993).  "The plaintiff need not show the controlling person's scienter or that they 'culpably participated' in the alleged wrongdoing."  *Paracor Fin., Inc.*, 96 F.3d at 1161 (citing *Arthur Children's Tr.*, 994 F.2d at 1398).  "If the plaintiff establishes that the defendant is a 'controlling person,' then the defendant bears the burden of proving he 'acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.'"  *Id.* (quoting 15 U.S.C. § 78t(a)).  "Courts have found 'general allegations concerning an individual's title and responsibilities' to be sufficient to establish control at the motion to dismiss stage."  *Kyung Cho*, 890 F. Supp. 2d at 1205 (quoting *In re Metawave Commc'ns Corp. Sec. Litig.*, 298 F. Supp. 2d 1056, 1087 (W.D. Wash. 2003)).

Here, the Court has already found that Plaintiff properly alleged Davis was a "controlling person."  *See supra* Section III.B.2.i.b.  However, despite Plaintiff sufficiently alleging control, Plaintiff's claim fails under the first prong.  Plaintiff does not state a viable primary violation against "any person liable under any provision of this

---

[7] 15 U.S.C. § 78t was modeled after the "controlling person provision" of 15 U.S.C. § 77o.  *Hollinger*, 914 F.2d at 1577; *see also id.* at 1568 n.4, 1578 ("Although [§ 77o] is not identical to [§ 78t], the controlling person analysis is the same."); *supra* Section III.B.2.i.b.

20-cv-438-MMA (AHG)

chapter or of any rule or regulation thereunder." 15 U.S.C. § 78t(a). Accordingly, Plaintiff fails to state a claim to under § 78t.

### iii. Conclusion

In sum, the Court finds that Plaintiff has not alleged a viable claim under the Securities Act or the Exchange Act. Therefore, this factor favors denying default judgment.

### iv. State Law Claims and Subject Matter Jurisdiction

Plaintiff alleges that the Court has subject matter jurisdiction pursuant to its federal statutory claims. *See* Compl. ¶ 1. With no viable federal claim to provide the Court with subject matter jurisdiction under 28 U.S.C. § 1331, 15 U.S.C. §77v, or 15 U.S.C. § 78aa, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims. *See* 28 U.S.C. §§ 1367(c)(3).

Plaintiff does not directly allege that the Court has diversity jurisdiction under 28 U.S.C. § 1332. Even if the Court were to further examine Plaintiff's Complaint, Plaintiff's allegations are insufficient to meet its burden to establish diversity jurisdiction.

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "They possess only that power authorized by Constitution and statute." *Id.* "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989). The party seeking federal jurisdiction bears the burden to establish jurisdiction. *Kokkonen*, 511 U.S. at 377 (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 182–83 (1936)).

Here, Plaintiff alleges that it is a "limited liability company with members, including its managing member, who reside in San Diego County, California." Compl. ¶ 7. For purposes of determining diversity jurisdiction, limited liability companies are citizens of all states of which their members are citizens. *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006). Moreover, residence is distinguishable from domicile. *See Gilbert v. David*, 235 U.S. 561, 569 (1915); *see also*

*Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) ("The natural person's state citizenship is . . . determined by her state of domicile, not her state of residence."). Plaintiff fails to allege the number of members it has and where each member is domiciled.  Moreover, Plaintiff's allegations center on residence, not citizenship. Similarly, Plaintiff alleges that "Davis is the CEO of Hoard who resides in North Carolina or elsewhere in the United States."  Compl. ¶ 9.  Again, residence is insufficient to establish citizenship.

Additionally, Plaintiff makes its jurisdictional allegations against Defendants based on information and belief.  *See* Compl. ¶¶ 8–9.  Plaintiff does not point to "unusual circumstances" that would excuse it from affirmatively alleging the parties' actual citizenship.  *See Kanter*, 265 F.3d at 857.  Further, Plaintiff has not argued or shown that information necessary to establish Defendants' citizenship "is not reasonably available" to Plaintiff.  *Carolina Cas. Ins. Co. v. Team Equip., Inc.*, 741 F.3d 1082, 1088 (9th Cir. 2014) (reversing and remanding a district court's order dismissing a complaint without leave to amend, before it was served, and noting that the diversity issue would be better addressed after defendants had an opportunity to respond).  Plaintiff does not provide the Court with information to show circumstances that would permit it to plead jurisdictional allegations based on information and belief.  Therefore, based on the information available, the Court finds that pleading premised on information and belief is insufficient to sustain Plaintiff's jurisdictional allegations.

Accordingly, Plaintiff fails to carry its burden to establish diversity jurisdiction to allow the Court to examine Plaintiff's state causes of action.

**3. The Sum of Money at Stake in the Action**

"The fourth *Eitel* factor balances 'the amount of money at stake in relation to the seriousness of the [d]efendant's conduct.'"  *Vogel*, 992 F. Supp. 2d at 1012 (quoting *PepsiCo, Inc.*, 238 F. Supp. 2d at 1176); *see also Eitel*, 782 F.2d at 1471.  "Default judgment is disfavored where the sum of money at stake is too large or unreasonable in

20-cv-438-MMA (AHG)

relation to defendant's conduct." *Id.*; *see also Truong Giang Corp. v. Twinstar Tea Corp.*, No. C 06-03594 JSW, 2007 WL 1545173, at *12 (N.D. Cal. May 29, 2007).

Here, Plaintiff seeks $175,000.00 plus prejudgment and postjudgment interest. *See* Doc. No. 11-1 at 2. Given that Plaintiff has not pleaded a successful claim against Defendants, *see supra* Section III.B.2, Plaintiff has not shown that Defendants' conduct merits a monetary award. Therefore, this factor favors denying default judgment.

### 4. The Possibility of a Dispute Concerning Material Facts

"The [fifth] *Eitel* factor considers the possibility that material facts are disputed." *Vogel*, 992 F. Supp. 2d at 1012 (quoting *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177); *see also Eitel*, 782 F.2d at 1471–72. In ruling on a motion for default judgment, courts take all factual allegations in the complaint as true, except those with regard to damages. *Televideo Sys., Inc.*, 826 F.2d at 917–18 (quoting *Geddes*, 559 F.2d at 560). Because the Court must presume Plaintiff's allegations are true on a motion for default judgment and Defendants do not oppose the motion, no factual disputes exist to bar default judgment. *See Vogel*, 992 F. Supp. 2d at 1013. Therefore, this factor favors granting default judgment. *See id.*

### 5. Whether the Default was Due to Excusable Neglect

"The [sixth] *Eitel* factor considers whether a defendant's default may have resulted from excusable neglect." *Vogel*, 992 F. Supp. 2d at 1013 (quoting *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177); *see also Eitel*, 782 F.2d at 1472. The record indicates minimal, if any, excusable neglect. Defendants received adequate notice of Plaintiff's action. Plaintiff served both Defendants. *See* Doc. Nos. 3, 8. Moreover, Plaintiff's CFO declares that he received a message from Davis on March 17, 2020 that said "Hey, Kyle." Chaykowski Decl., Doc. No. 11-2 ¶ 4. Plaintiff's CFO replied to Davis on March 20, 2020 and stated that communication should be directed to Plaintiff's counsel; the CFO received no further communication from Davis. *Id.* ¶¶ 5–6. Based on the docket and declarations provided by Plaintiff, the Court finds that Defendants' default is likely not the result of excusable neglect. Therefore, this factor favors granting default judgment.

20-cv-438-MMA (AHG)

**6. The Strong Policy Underlying the Federal Rules of Civil Procedure Favoring Decisions on the Merits**

The seventh *Eitel* factor considers whether the Federal Rule of Civil Procedure's strong policy favoring decisions on the merits permits default judgment in an action. *See Eitel*, 782 F.2d at 1472. "Cases should be decided upon their merits whenever reasonably possible." *Id.* (quoting *Pena v. Seguros La Comercial, S.A.*, 770 F.2d 811, 814 (9th Cir. 1985)). However, Rule 55(b)'s existence implies that "this preference, standing alone, is not dispositive." *Vogel*, 992 F. Supp. 2d at 1013 (quoting *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177). Therefore, this factor favors denying default judgment but does not preclude granting default judgment. *See id.*

**7. Conclusion**

Examining the *Eitel* factors, the Court finds that default judgment is not warranted. Primarily, Plaintiff's failure to state a plausible federal claim prevents the Court from issuing a judgment in its favor.

**C. Damages**

As already noted, the court assumes the truth of the plaintiff's allegations, except for allegations regarding damages. *Televideo Sys., Inc.*, 826 F.2d at 917–18 (quoting *Geddes*, 559 F.2d at 560). "[A] default judgment for money may not be entered without a hearing unless the amount claimed is a liquidated sum or capable of mathematical calculation." *Davis v. Fendler*, 650 F.2d 1154, 1161 (9th Cir. 1981). The plaintiff must "prove up" all sought monetary damages through submitting admissible evidence. *Blizzard Entm't, Inc. v. Reeves*, No. CV 09-7621 SVW (AJWx), 2010 WL 4054095, at *1 (C.D. Cal. Aug. 10, 2010); *Elektra Entm't Grp., Inc. v. Bryant*, No. CV 03-6381 GAF (JTLx), 2004 WL 783123, at *2 (C.D. Cal. Feb. 13, 2004).

Even if Plaintiff stated a valid claim to warrant a monetary award, the Court declines to award monetary damages without Plaintiff first providing the Court with an appropriate manner to calculate the value of its original investment. *See Hodges v. Monkey Capital, LLC*, No. 17-81370-cv-Middlebrooks, 2018 WL 9686569, at *9 (S.D.

Fla. Aug. 14, 2018) (declining to enter an award of cash damages before establishing the value of the plaintiffs' investments).  Plaintiff alleges that the parties entered into the Agreement where "Plaintiff purchased OAR tokens for $175,000.00 as part of one of '2 private tranches' of OAR token sales which Defendants represented would be followed by a public offering."  Compl. ¶ 14.  Later, Plaintiff's own allegations make it unclear whether its consideration was in the form of U.S. currency or a form of cryptocurrency: "Plaintiff and other investors invested their money in OAR tokens.  Investors paid either U.S. dollars or with cryptocurrency such as Ether to purchase their OAR tokens from Defendants."  *Id.* ¶ 19.  Plaintiff's motion indicates that "Plaintiff sent Defendants $175,000.00 in the form of Ethereum."  Doc. No. 11-1 at 2 (citing Chaykowski Decl., Doc. No. 11-2 ¶ 3).  In the next sentence, Plaintiff requests "a judgment holding Defendants jointly and severally liable to return *such amount*" plus prejudgment and postjudgment interest.  *Id.* (emphasis added).

The Court requires greater clarity on Plaintiff's sought damages.  Plaintiff's Complaint and motion create confusion regarding whether Plaintiff requests a damages award in U.S. dollars or in the originally paid cryptocurrency.  Further, the Court is left without an appropriate manner to calculate the value of Plaintiff's original investment if it was made in the form of cryptocurrency; Plaintiff should detail the quantity of Ethereum paid to Defendants and the dollar value of Ethereum at the time of Plaintiff's investment.  Thus, Plaintiff must provide evidence and argument to "prove up" its sought relief and identify the precise award sought.[8]

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's motion for default judgment against Defendants without prejudice.  If Plaintiff chooses to amend its claims

---

[8] Based on the current Complaint and motion, the Court finds that a hearing would be unnecessary given that Plaintiff's alleged damages appear to be for a definite sum quantifiable through simple calculation. *See Davis*, 650 F.2d at 1161; *see also Anonymous v. Gonzalez,* No. 16-cv-374-W (BLM), 2018 WL 6582833, at *2 (S.D. Cal. Oct. 30, 2018).

20-cv-438-MMA (AHG)

against Defendants, Plaintiff must file an amended complaint on or before **July 6, 2020**. Defendants not named and any claim not re-alleged in an amended complaint will be considered waived.  *See* CivLR 15.1; *Ramirez v. County of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015) (citing *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997), *overruled on other grounds by Lacey v. Maricopa County*, 693 F.3d 896, 927–28 (9th Cir. 2012)) ("An 'amended complaint supersedes the original, the latter being treated thereafter as non-existent.'"); *Lacey*, 693 F.3d at 928 (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be considered waived).

**IT IS SO ORDERED**.

Dated: June 19, 2020

HON. MICHAEL M. ANELLO
United States District Judge

22

20-cv-438-MMA (AHG)